**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

LUCENA R.,

                                        Plaintiff,                                        No. 5:18-CV-733
                                                                                          (CFH)

          v.

ANDREW SAUL,[1]

                                        Defendant.

---

**APPEARANCES:**                                        **OF COUNSEL:**

Olinsky Law Group                                        HOWARD D. OLINKSY, ESQ.
250 South Clinton Street
Suite 210
Syracuse, New York 13202
Attorney for Plaintiff

Social Security Administration                           DANIEL STICE TARABELLI, ESQ.
Office of the General Counsel                            Special Assistant U.S. Attorney
15 Sudbury Street, Suite 625
Boston, Massachusetts 02203
Attorney for the Commissioner

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

          Plaintiff Lucena R. brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner")

denying her application for disability insurance benefits.  Dkt. No. 1 ("Compl.").[2]  Plaintiff

---

          [1] Andrew Saul was appointed Commissioner of Social Security, and has been substituted as the defendant in this action.

          [2] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), FED. R. CIV. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  Dkt. No. 6.

moves for a finding of disability or remand for a further hearing, and the Commissioner cross moves for a judgment on the pleadings. Dkt. No. 9, 11. For the following reasons, the determination of the Commissioner is affirmed.

## I. Background

Plaintiff was born in 1967, and completed her high school education. T. 52, 68.[3] She lives with her husband, son, daughter-in-law, granddaughter, and niece. Id. at 62. Plaintiff previously worked as a "COBRA specialist." Id. at 165. She also babysits for her grandchildren. Id. at 53-54.

On November 28, 2016, plaintiff protectively filed a Title II application for disability insurance benefits. T. 142-43. Plaintiff alleged an onset date of January 4, 2016. Id. at 142. Plaintiff's application was initially denied on January 30, 2017. Id. at 81-84. Plaintiff requested a hearing, and a hearing was held on September 11, 2017 before Administrative Law Judge ("ALJ") John P. Ramos. Id. at 47-67, 86-87. On January 22, 2018, ALJ Ramos issued an unfavorable decision. Id. at 18-26. On April 20, 2018, the Appeals Council denied plaintiff's request for review, making the ALJ's findings the final determination of the Commissioner. Id. at 1-3. Plaintiff commenced this action on June 22, 2018. See Compl.

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Dkt. No. 8. Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

## II. Discussion

## A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder *would have to conclude otherwise*."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the

plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based on his or her age, education, and work experience. Id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairments is "based [upon] objective medical facts, diagnoses or medical opinions inferable from the facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

4

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

## C. ALJ Decision

Applying the five-step disability sequential evaluation, the ALJ determined that

plaintiff had not engaged in substantial gainful activity since January 4, 2016, the alleged onset date. T. 20. The ALJ found at step two that plaintiff had the severe impairments of degenerative disc disease of the cervical spine and diabetes with neuropathy. Id. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 23. Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to:

> lift and/or carry ten pounds frequently and 20 pounds occasionally, sit for six hours in an eight-hour day, and stand and/or walk for six hours in an eight-hour day. [Plaintiff] is able to frequently climb stairs, ramps, stoop, kneel, crouch, and crawl and occasionally balance, but should not climb ladders or scaffolds, or work at unprotected heights. This is consistent with the ability to perform less than the full range of light work as defined in 20 CFR 404.1567(b).

Id. At step four, the ALJ found that plaintiff was capable of performing her past relevant work as a benefits administrator/benefits clerk as the work did "not require the performance of work-related activities precluded by [plaintiff's] residual functional capacity." Id. at 25. The ALJ did not reach step five. Thus, the ALJ determined that plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, from January 4, 2016, through the date of this decision." Id. at 26.

## D. Arguments

Plaintiff first argues that the ALJ incorrectly found plaintiff's Parkinson's disease

to be non-severe at step two, and failed to incorporate any associated limitations into the RFC determination.  Dkt. No. 9 at 9-12.  Second, plaintiff argues that the ALJ failed to follow the treating physician rule and did not properly weight plaintiff's treating providers.  Id. at 12-18.  Specifically, plaintiff contends that the ALJ improperly weighed the opinions of Dr. S. Chandrasekhar, Dr. Kalyani Ganesh, and Dr. Yola Augustin.  See id.  Conversely, the Commissioner argues that the RFC determination adequately accounts for plaintiff's Parkinson's disease, and the ALJ properly weighed the opinion evidence.  Dkt. No. 11 at 3-13.

### E. Relevant Medical Evidence

### 1. Sreedevi Chandrasekhar, M.D.

On December 11, 2017, non-examining state agency medical consultant Dr. Sreedevi Chandrasekhar reviewed plaintiff's record and rendered an opinion regarding her limitations.  See T. 545.  Dr. Chandrasekhar opined that plaintiff could continuously lift and carry up to 20 pounds, frequently carry up to fifty pounds, and occasionally carry up to 100 pounds; plaintiff could sit for six hours at a time for a total of eight hours in an eight-hour day, stand for four hours at a time for a total of six hours in an eight-hour day, and walk four hours at a time for a total five hours in an eight-hour day; she could continuously reach, handle, finger, feel, and push or pull with both hands; plaintiff could occasionally operate foot controls with both feet; plaintiff could never climb ladders or scaffolds, occasionally balance, continuously climb stairs and ramps, and frequently stoop, kneel, crouch, or crawl; plaintiff could never be exposed to unprotected heights

or moving mechanical parts and could occasionally operate a motor vehicle. Id. at 548-52. Plaintiff had no limitations performing activities of daily living, including shopping, traveling without a companion, using public transportation, preparing meals, caring for her personal hygiene, or handling papers or files. Id. at 553.

## 2. Kalyani Ganesh, M.D.

On January 23, 2017, plaintiff met with Dr. Ganesh for an internal medicine examination. Plaintiff indicated that she had high blood pressure, which was controlled with medication. T. 300. She had diabetes, which she checked regularly. Id. She reported that she had neuropathy in her feet, which caused tingling and numbness in her feet. Id. Plaintiff reported neck problems; disc herniation; facet disease; and multilevel degenerative disc disease. Id. Plaintiff noted pain in her neck that radiated down her right arm, shoulder, and upper back. Id. She reported that she has pain all the time. Id. She performs chores at her own pace, as her pain is an aching or sharp pain and increases with activity. Id. Plaintiff indicated that she had nerve blocks. Id. Plaintiff reported that she could cook, clean, do laundry, shop, provide childcare, shower, and dress. Id. at 301.

Dr. Ganesh observed that plaintiff appeared to be in no acute distress. T. 301. Plaintiff's gait was normal. Id. She could not walk on her heels, but walked on her toes. Id. She could squat fifty percent, and her stance was normal. Id. Plaintiff used no assistance devices, and she needed no help changing for the examination or getting on and off the examination table. Id. Plaintiff was able to rise from her chair without

difficulty.  Id.  Dr. Shapiro observed that plaintiff's cervical spine showed full flexion, extension 25 degrees, full lateral flexion bilaterally, and full rotary movement bilaterally. Id. at 302.  Plaintiff had no scoliosis, kyphosis, or abnormality in thoracic spine.  Id.  Her lumbar spine showed flexion 75 degrees, extension 15 degrees, lateral flexion 10 degrees bilaterally, and rotary movement 10 degrees bilaterally.  Id.  Her SLR was negative bilaterally.  Id.  Plaintiff had full range of motion in her shoulders, elbows, forearms, and wrists bilaterally.  Id.  She had full range of motion in her hips, knees, and ankles bilaterally.  Id.  Plaintiff's joints were stable and nontender.  Id.  Plaintiff's hand and finger dexterity was intact, and her grip strength was 5/5 bilaterally.  Id.

Dr. Ganesh opined that plaintiff had no limitations sitting, standing, and walking. T. 303.  Plaintiff had mild-to-moderate limitations lifting, carrying, pushing, and pulling. Id.

### 3. Yola Augustin, M.D.

On June 26, 2017, Dr. Augustin completed a Department of Motor Vehicle ("DMV") form entitled "Application for a Parking Permit or License Plates for Persons with Severe Disabilities."  T. 383.  Dr. Augustin indicated that plaintiff's neuromuscular dysfunction severely limited her mobility.  Id.  Dr. Augustin further indicated that plaintiff would be unable to walk 200 feet without stopping.  Id.

### F. Whether the ALJ Properly Considered Plaintiff's Parkinson's Disease

Plaintiff argues that the ALJ erred in (1) finding plaintiff's Parkinson's disease

non-severe at step two; and (2) failing to incorporate any limitations associated with the Parkinson's disease into the RFC determination. See Dkt. No. 9 at 9-12.

At step two, the ALJ must determine whether the claimant has a severe impairment that significantly limits his physical or mental abilities to do basic work activities. 20 C.F.R. § 416.920(c). "An impairment is 'severe' if it 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" Eralte v. Colvin, No. 14 Civ. 1745(JCF), 2014 WL 7330441, at *10 (S.D.N.Y. Dec. 23, 2014) (quoting 20 C.F.R. § 404.1520(c)). Basic work activities include walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers, and usual work situations. See Taylor v. Astrue, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing Gibbs v. Astrue, No. 07-CV-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. §§ 404.1521(b)(1)-(5)). "Although the Second Circuit has held that this step is limited to 'screening out *de minimis* claims,' [ ] the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe." Taylor, 32 F. Supp. 3d at 265 (quoting Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995); Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y. 1995) ). Overall, the claimant retains the burden of presenting evidence to establish severity. See id. (citing Miller v. Comm'r of Soc. Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).

This Court has indicated the failure to find a specific impairment severe at step

two is harmless where the ALJ concludes (a) there is at least one other severe impairment, (b) the ALJ continues with the sequential evaluation, and (c) the ALJ provides explanation showing she adequately considered the evidence related to the impairment that is ultimately found non-severe. See Fuimo v. Colvin, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing Dillingham v. Astrue, No. 09-CV-0236, 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010), report and recommendation adopted by 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010) ); see also Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order) (finding that any error in failing to find plaintiff's anxiety and panic disorder severe at step two would be harmless because the ALJ found other severe impairments present, continued through the sequential evaluation process, and specifically considered plaintiff's anxiety and panic attacks at those subsequent steps).

Here, the ALJ found that plaintiff's degenerative disc disease of the cervical spine and diabetes with neuropathy were severe impairments at step two. T. 20. In concluding that plaintiff's Parkinson's diagnosis did not constitute a severe impairment, the ALJ reasoned that "[a]n MIR of [plaintiff's] brain performed in May 2017 showed findings consistent with Parkinson's disease. However, there is no clinical finding showing tremors or gait abnormality. Therefore, while the MRI showed findings consistent with Parkinson's disease, the clinical findings do not show that the disease has yet manifested in terms of functional limitations." T. 21. Plaintiff argues that, in making this statement, ALJ failed to take into account instances in the record wherein plaintiff indicates that she experienced tremors. Dkt. No. 9 at 11. The Commissioner

argues that because ALJ found a severe impairment and continued on with the sequential evaluation, the ALJ's omission is harmless at best, and plaintiff's argument is better framed as "whether the ALJ adequately analyzed [p]laintiff's Parkinson's disease during the RFC finding." Dkt. No. 11 at 4. The Court agrees with the Commissioner.

In considering plaintiff's Parkinson's diagnosis in his RFC determination, the ALJ stated

> [w]hile [plaintiff's] providers noted that she ha[d] Parkinson's, there were no documented findings showing loss of functioning in her hands or abnormal gait. In May and August 2017, [plaintiff] had no tremor in her hands. [Plaintiff's] gait was normal in 2016 and 2017. She had normal strength in her upper and lower extremities.

T. 24 (citing id. at 264, 279, 288, 301, 302, 333, 392, 405, 411, 421, 500, 503, 506, 512, 515, 523). In attempting to contradict the ALJ's opinion, plaintiff points to at least three instances in the record wherein she reports tremors. See Dkt. No. 9 at 11. However, the Court notes that at least two of the instances depict plaintiff's self-reporting of tremors, and the reporting medical provider indicated that plaintiff had no evidence of tremors during the examination or problems walking. T. 331, 449-500. To the extent that plaintiff references Dr. Drago's January 2017 notation which states that "tremors [were] present in both legs and there is very subtle bradykinesia and rigidity on the right side," the Court notes that the next sentence reads that plaintiff had "very subtle features of Parkinsonism" and that "the current symptoms [were] not disabling." Id. at 406.

Such evidence is consistent with the opinion of Dr. Sreedevi Chandrasekhar, the non-examining state agency medical consultant, who stated that a review of plaintiff's

record indicated that she had "Parkinson's like symptoms. T. 545. Insofar as plaintiff finds fault with Dr. Chandrasekhar's opinion because he wrote "will do" when asked to identify any functional limitations or restrictions that resulted from plaintiff's impairments, the Court observes that the next six pages detail Dr. Chandrasekhar's opinion regarding plaintiff's functional limitations, if any. See id. at 548-53. Thus, to the extent that plaintiff attempts to discredit Dr. Chandrasekhar for rendering a "useless" opinion or not taking the process seriously, this argument is misplaced. See Dkt. No. 9 at 14.

It is well-settled that any conflict in the evidence is for the ALJ to resolve. See Cage v. Comm'r of Soc. Sec., 692 F. 3d 118, 122 (2d. Cir. 2012). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F. 2d 60, 62 (2d Cir. 1982). Given Dr. Chandrasekhar's opinion regarding plaintiff's limitations, as well as the medical evidence in the record suggesting that plaintiff's Parkinson's disease did not require stricter limitations, there is substantial evidence in the record which supports the ALJ's determination that the plaintiff's Parkinson's disease was not a severe impairment. In the alternative, the Court finds that any error by the ALJ in failing to find plaintiff's Parkinson's severe would be harmless because he did find other impairments severe, continued with the sequential evaluation, and provided adequate explanation in his decision showing that he properly considered the evidence related to plaintiff's various impairments. See Fuimo, 948 F. Supp. 2d at 269-70; Reices-Colon, 523 F. App'x at 798. For the reasons above, the ALJ's findings regarding Plaintiff's

13

impairments at step two are supported by substantial evidence and remand is therefore not required on this ground.

### G. The ALJ's Analysis of Opinion Evidence and Plaintiff's RFC

When evaluating a claim seeking disability benefits, factors to be considered by the ALJ include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant. See Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir.1991).  Generally, more weight is given to a treating source.  Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) (2005); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). "This rule applies equally to retrospective opinions given by treating physicians." Campbell v. Astrue, 596 F. Supp. 2d 445, 452 (D.Conn. 2009) (citations omitted). Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons."  Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors."  Schaal, 134 F.3d at 503.  If other evidence in the record conflicts with the opinion of the treating physician, this

opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given.  See Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) (citation omitted).  Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner.  See id. at 133-34; 20 C.F.R. § 404.1527(e) (2005).

RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms.  See Martone, 70 F. Supp. 2d at 150; 20 C.F.R. §§ 404.1545, 416.945.  "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient."  Martone, 70 F. Supp. 2d at 150.  The ALJ then uses the RFC to determine whether the claimant can perform his or her past relevant work.  See New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960.  If it is determined that a claimant cannot perform past relevant work, "the burden shifts to the Commissioner to determine whether there is other work which the claimant could perform."  Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability.  See also Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin,

No. 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).  "An ALJ should consider 'all medical opinions received regarding the claimant.'"  Reider v. Colvin, No. 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting Spielberg v. Barnhart, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant.  20 C.F.R. §§ 404.1527(c)(1)-(6).

### 1. Dr. Chandrasekhar

The ALJ granted Dr. Chandrasekhar's opinion "great weight" because his opinion was a "based on his review of the medical evidence, knowledge of the Social Security disability program, and medical expertise."  T. 25.  Plaintiff argues that ALJ erred in relying on Dr. Chandrasekhar's opinion because it is "wholly lacking any explanation of [p]laintiff's impairments."  Dkt. No. 9 at 14.  The Court disagrees.  Although Dr. Chandrasekhar did utilize a checkbox form, he handwrote his assessment of plaintiff's impairments based on his review of her medical records — ultimately assessing that plaintiff's "physical exam showed findings otherwise within normal limits."  T. 545.  Dr.

Chandrasekhar also provided a detailed assessment of plaintiff's functional limitations: plaintiff could continuously lift and carry up to 20 pounds, frequently carry up to fifty pounds, and occasionally carry up to 100 pounds; plaintiff could sit for six hours at a time for a total of eight hours in an eight-hour day, stand for four hours at a time for a total of six hours in an eight-hour day, and walk four hours at a time for a total five hours in an eight-hour day; she could continuously reach, handle, finger, feel, and push or pull with both hands; plaintiff could occasionally operate foot controls with both feet; plaintiff could never climb ladders or scaffolds, occasionally balance, continuously climb stairs and ramps, and frequently stoop, kneel, crouch, or crawl; plaintiff could never be exposed to unprotected heights or moving mechanical parts and could occasionally operate a motor vehicle. Id. at 548-52. As stated above, such limitations are consistent with plaintiff's medical records, which demonstrate that her Parkinson's disease had not manifested into symptoms that were disabling. See supra, at 13-14; T. 406. As such, the Court finds the ALJ properly weighed Dr. Chandrasekhar's opinion.

## 2. Dr. Ganesh

The ALJ afforded Dr. Ganesh's opinion "great weight" because it was "supported by Dr. Ganesh's findings upon examining [plaintiff]." T. 25. Plaintiff argues that this was in error because Dr. Ganesh's "use of the terms 'minimal-to-mild' to describe the level of exertion that [p]laintiff cannot perform is so vague as to render the assessment useless for purposes of evaluating [p]laintiff's residual functional capacity." Dkt. No. 9 at 15. The Court disagrees.

Dr. Ganesh opined that plaintiff had no limitations sitting, standing, and walking. T. 303. Plaintiff had mild-to-moderate limitations lifting, carrying, pushing, and pulling. Id. Such limitations are consistent with Dr. Ganesh's examination, wherein she observed normal gait and stance, fifty percent squat, full flexion in the cervical spine, full range of motion in her shoulders, elbows, forearms, wrists, hips, knees, and ankles bilaterally, and intact hand and finger dexterity. Id. at 301. Insofar as plaintiff takes issue with Dr. Ganesh's use of the term "mild to moderate," the Court notes that "the use of 'mild to moderate[ ]' in describing [plaintiff's] limitations does not render Dr. [Ganesh's] opinion impermissibly vague." Ridosh v. Berryhill, No. 16-CV-6466L, 2018 WL 6171713, at *7 (W.D.N.Y. Nov. 26, 2018) (citation omitted). Moreover, "[c]ourts within this Circuit have held that opinions of similar 'mild to moderate limitations' support RFC findings that claimants are capable of 'light work.'" Gerry v. Berryhill, No. 17-CV-7371 (JS), 2019 WL 955157, at *3 (E.D.N.Y. Feb. 26, 2019) (citing Bates v. Berryhill, No. 17-CV-3311, 2018 WL 2198763, at *11 (E.D.N.Y. May 14, 2018) (finding that "mild to moderate limitation for sitting, and a moderate limitation in standing, bending, and lifting or carrying on a continuing basis" supported the ALJ's RFC determination that the claimant could perform light work)). The Court agrees with the Commissioner's argument that this case is distinguishable from Curry v. Apfel, which plaintiff cites, in that the ALJ appropriately discussed Dr. Ganesh's unremarkable examination findings in conjunction with her opinion for "mild to moderate" limitations. See T. 24-25; Dkt. No. 11 at 9-10. Accordingly, the Court finds that the ALJ properly weighed Dr. Ganesh's opinion.

18

### 3. Dr. Augustin

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because he failed to weigh the opinion of Dr. Augustin, plaintiff's treating physician. See Dkt. No. 9 at 15-18. The Court disagrees for the reasons set forth in the Commissioner's brief. Plaintiff presented to Dr. Augustin on July 11, 2017, and requested that she complete a DMV form. T. 514. Dr. Augustin indicated that she would "complete [plaintiff's] DMV form, due to her recurrent falls." Id. at 515. That same day, Dr. Augustin completed the form, indicating that plaintiff was unable to walk 200 feet without stopping, and that she had severely limited mobility. Id. at 383.

Plaintiff is correct that the ALJ does not mention the DMV form in assessing plaintiff's RFC. However, the Court agrees with the Commissioner that at the time Dr. Augustin completed the form, she had only met with plaintiff once, and, therefore, was not in a treating relationship with plaintiff. See Southard v. Comm'r of Soc. Sec., No. 17-CV-867S, 2019 WL 101252, at *7 (W.D.N.Y. Jan. 4, 2019) ("In addition, Dr. Huckell rendered his opinion of Plaintiff's disability and work restrictions at the initial visit, before any ongoing treatment relationship was formed.") (citing Cramer v. Berryhill, 2017 WL 4784318, at *3 (W.D.N.Y. Oct. 24, 2017) (holding that a doctor "was not a treating physician when he rendered an opinion during [a claimant's] first visit")); see also Kane v. Astrue, No. 1:10-CV-1874, 2011 WL 3353866, at *7 (N.D. Ohio Aug. 23, 2011) ) ("For purposes of the treating physician rule, the question is whether the physician had the ongoing relationship with the claimant to qualify as a treating physician at the time he rendered his opinion. Clearly, Dr. Ahn did not have an ongoing relationship with Plaintiff

at the time of her first visit.") (internal quotation marks, citation, and alterations omitted); Hickman v. Colvin, No. 1:13-CV-00089, 2014 WL 2765670, at *12 (M.D. Tenn. June 18, 2014) ("[O]pinions rendered during a physician's first visit with a claimant are not entitled to controlling weight."), report and recommendation adopted, 2014 WL 3404967 (M.D. Tenn. July 10, 2014). Thus, at the time that she completed the DMV form, Dr. Augustin was not a treating source.

Moreover, the Court agrees with the Commissioner that, in the alternative, the ALJ's omission of Dr. Augustin's opinion constitutes harmless error because "the ALJ indirectly attack[ed] the evidence upon which that opinion [was] based." Dkt. No. 11 at 11. It is well-settled that "the ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony.'" Montanez v. Berryhill, 334 F. Supp. 3d 562, 565 (W.D.N.Y. 2018) (quoting Gecevic v. Secretary of Health & Human Servs., 882 F. Supp. 278, 286 (E.D.N.Y. 1995)). As the Commissioner notes, the ALJ discussed the subjective complaints upon which Dr. Augustin based his opinion on in completing the DMV form and found them inconsistent with other medical evidence in the record, namely plaintiff's generally unremarkable examination findings and her ability to baby-sit for her grandchildren three to five hours per day for four to five days a week. See T. 24 (citing 172, 174, 301, 302); Dkt. No. 11 at 12. Further, as the Commissioner argues, the ALJ found that plaintiff could perform her past work as a "benefits administrator/benefits clerk," which, based on plaintiff's own admission, does not require walking 200 feet without stopping. See T. 25, 191 (describing her past work as a benefits administrator/clerk: "sat at a computer, entered information, posted

documents, answered phones"). Additionally, plaintiff admits that Dr. Augustin's opinion supports sedentary work, which does not preclude plaintiff's past work as a benefits administrator/clerk, wherein she indicated that she sat all day. <u>See</u> Dkt. No. 9 at 17; Dkt. No. 11 at 12-13. Therefore, the Court agrees with the Commissioner that "even if the ALJ had credited Dr. Augustin[ ]'s opinion, he still would have found [p]laintiff not disabled at step four." Dkt. No. 11 at 12.

Accordingly, the Court concludes that the ALJ did not err in failing to weigh Dr. Augustin's opinion because she was not plaintiff's treating physician at the time she completed the DMV form. Moreover, even if the ALJ erred in failing to discuss Dr. Augustin's opinion, such error would be harmless. As such, remand is not required on this basis.[4]

The ALJ has the responsibility of reviewing all the evidence before him, resolving inconsistencies, and making a determination consistent with the evidence as a whole. <u>See</u> <u>Bliss v. Colvin</u>, No. 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015). "[I]t is the province of the ALJ to consider and resolve conflicts in the evidence as long as the decision rests upon 'adequate findings supported by evidence having rational probative force.'" <u>Camarata v. Colvin</u>, No. 14-CV-0578, 2015 WL 4598811, at *9 (N.D.N.Y. July 29, 2015) (quoting <u>Galiotti v. Astrue</u>, 266 F. App'x 66, 67 (2d Cir. 2008) (summary order)). It is clear from the ALJ's overall decision that he appropriately considered the evidence before him, including the opinions of record and plaintiff's

---

[4] Because the Court finds that the ALJ's decision was based on substantial evidence, plaintiff's argument concerning the Single Decision Maker is misplaced. <u>See</u> Dkt. No. 9 at 16-17.

medical records.

As such, the Court's review of the ALJ's overall decision indicates that he properly reviewed the evidence of record and provided sufficient explanation for his analysis. For the reasons above, the Court therefore finds that the ALJ's RFC determination (including his analysis of the opinion evidence) and overall finding that plaintiff is not disabled are supported by substantial evidence.

### III. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that Lucena R.'s motion (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: September 18, 2019
     Albany, New York

Christian F. Hummel
U.S. Magistrate Judge